**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dee Wilson,<br><br>       Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>       Defendant. | No. CV-21-08059-PCT-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 22), the Commissioner's answering brief (Doc. 25), and Plaintiff's reply (Doc. 28), as well as the Administrative Record (Doc. 19, AR), and now reverses and remands for further proceedings.

**I.   PROCEDURAL HISTORY**

On May 3, 2018, Plaintiff filed an application for disability and disability insurance benefits, and on May 14, 2019, Plaintiff filed an application for supplemental security income. (AR at 15.) In both applications, Plaintiff alleged disability beginning on March 21, 2018. (*Id.*) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On October 19, 2020, following a hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-32.) The Appeals Council later denied review.

## II. THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: obesity; plantar fasciitis; status post reconstruction of the claimant's right-thumb ulnar collateral ligament; status post left-shoulder surgery; status post open reduction and internal fixation of the claimant's right clavicle status post motor vehicle accident; asthma; depressive disorder; anxiety disorder; and post-traumatic stress disorder. (AR at 18.) Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 19-21.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant cannot ever climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. She can occasionally balance. She can occasionally stoop, crouch, crawl, and kneel. She can occasionally operate foot controls. The claimant can only occasionally reach overhead with her bilateral upper extremities. The claimant can only frequently handle with her right hand. She can tolerate only occasional exposure to non-weather related extreme cold. She can tolerate only occasional exposure to pulmonary irritants. The claimant can tolerate only occasional exposure to poorly ventilated areas. The claimant's work can involve understanding remembering and carrying out only simple instructions. The claimant's work can involve only occasional routine changes in the work setting. The claimant's work can involve only average production standards. The claimant's work can involve only occasional in-person interaction with the public. The claimant's work can involve only occasional interaction with co-workers.

(*Id.* at 22.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding after an extensive discussion that "it is apparent that the claimant's alleged impairments, and the limitations they impose upon her capacities to perform regular and sustained work, cannot be wholly accepted." (*Id.* at 22-27.) The ALJ also evaluated opinion evidence from the following six medical sources: (1) Grayson Dart, D.O., psychological consultative examiner ("partially persuasive" in part and "not persuasive" in part); (2) Colin Joseph, Ph.D., a treating source ("moderately persuasive" in part and "not

persuasive" in part); (3) Stephen Gill, Ph.D., consultative examiner ("not persuasive"); (4) Anna Cocilovo, P.A., consultative examiner ("not persuasive"); (5) Melissa Richey, N.P., a treating source ("not persuasive"); and (6) Spencer Claussen, FNP, a treating source ("not persuasive"). (*Id.* at 27-29.) Additionally, the ALJ evaluated several "prior administrative medical findings" and found them "not persuasive." (*Id.* at 29.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing her past relevant work as a floor manager, she was capable of performing several other jobs that exist in significant numbers in the national economy, including garment sorter, mail sorter, and dispatcher-router. (*Id.* at 29-31.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 31-32.)

**IV.   DISCUSSION**

Plaintiff presents three issues on appeal: (1) whether the ALJ erred when discrediting the opinions of Dr. Joseph; (2) whether the ALJ erred when discrediting the opinions of Dr. Gill; and (3) whether the ALJ erred when discrediting the opinions of PA Cocilovo. As a remedy, Plaintiff seeks a remand without further administrative proceedings, other than calculation of benefits, pursuant to the credit-as-true test.

A.   Evaluation Of Medical Opinion Evidence

1.   **Standard Of Review**

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[1]  Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).  Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).  Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

2. **Dr. Joseph**

a. The Underlying Opinions

In May 2018, Dr. Joseph completed a form entitled "Mental Capacity Assessment." (AR at 357-59.) In this form, Dr. Joseph checked boxes indicating that Plaintiff suffered from "marked"[2] limitations in her "ability to handle conflicts with others," "respond to requests, suggestions, criticism, correction and challenges," and "keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." (*Id.*) Dr. Joseph indicted "moderate" limitations in several other functional areas, including in Plaintiff's abilities to "ignore or avoid distractions while working," "work close to or with others without interrupting or distracting them," "work a full day without needing more than the allotted number or length of rest periods during the day," and "manage psychologically based symptoms." (*Id.*) Dr. Joseph assigned Plaintiff only a "mild" limitation in her "ability to sustain an ordinary routine and regular attendance at work." (*Id.*) When prompted to "[d]escribe the medical/clinical findings that support [each] assessment," Dr. Joseph provided no explanation. (*Id.* at 359.)

In June 2020, Dr. Joseph completed another "Mental Capacity Assessment" form concerning Plaintiff. (*Id.* at 945-47.) The opinions were largely the same as in the May 2018 form, except this time Dr. Joseph indicated a "marked" (rather than "mild") limitation in Plaintiff's "ability to sustain an ordinary routine and regular attendance at work." (*Id.* at 946.) As with the previous form, Dr. Joseph provided no information in response to the query asking him to "[d]escribe the medical/clinical findings that support [each] assessment." (*Id.*)

b. The ALJ's Evaluation

The ALJ deemed Dr. Joseph's opinions moderately persuasive in some respects but not persuasive in other respects. (*Id.* at 27-28.) More specifically, the ALJ explained:

> On both occasions Dr. Joseph opined that the claimant will have "marked" restrictions across several areas, including her ability to manage conflicts

---

[2] The form defined "marked" as: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (AR at 357.)

with others. In both documents, though, Dr. Joseph also said that the claimant will have "no" limitations performing a task that she "knows how to do." These statements are moderately persuasive. The Administrative Law Judge specifically finds persuasive Dr. Joseph's statements that the claimant will have "no" limitations performing a task that she "knows how to do." That conclusion is generally consistent with the medical evidence of record, including descriptions of the claimant's thought processes as cogent. (8F/3; 27F/3.) The undersigned finds the remainder of Dr. Joseph's opinions, though, not persuasive. These articulations are not well supported. Dr. Joseph's opinions first do not evidence consideration of much of the other medical evidence of record. Additionally, as primarily check-box forms, these statements are not well explained. Additionally, the remainder of Dr. Joseph's statements are broadly inconsistent with the objective documentation of record, including observations of the claimant maintaining normal eye contact (11F/7), and speaking normally (10F/4; 11F/7, 8).

(*Id.*)

### c.   The Parties' Arguments

Plaintiff argues that the ALJ committed reversible error when discrediting Dr. Joseph's opinions. (Doc. 22 at 8-12.) First, citing cases decided before the issuance of the new SSA regulations, Plaintiff argues that "[t]he ALJ's claim that Dr. Joseph's medical statements are 'not well supported' is not a valid reason to reject treating medical opinion evidence. Similarly, the fact that a medical opinion is provided in the format of a 'check-the-box' form is not a valid reason to reject it, even if the medical opinion is not accompanied by any basis for the physician's answers." (*Id.* at 9-10.) Next, Plaintiff faults the ALJ for relying on evidence of normal eye contact and speech, arguing that such considerations "are irrelevant to Dr. Joseph's medical opinions." (*Id.* at 10-11.) Finally, Plaintiff argues that the ALJ "committed harmful legal error in failing to consider Dr. Joseph's well-established treating and examining relationship in weighing Dr. Joseph's medical opinions." (*Id.* at 11.)

In response, the Commissioner argues that Plaintiff's arguments miss the mark because "to her detriment [she] has relied on the old regulations—regulations not applicable in this case." (Doc. 25 at 15-16.) Turning specifically to Dr. Joseph, the Commissioner argues that the ALJ properly considered the consistency and supportability

factors and properly discredited some of Dr. Joseph's opinions based on application of those factors. (*Id.* at 20-21.) The Commissioner concludes: "The Court should resist Plaintiff's plea to rely on outdated regulations that once, but no longer, required ALJs to evaluate opinion evidence under substantially different standards than those applicable here." (*Id.* at 21.)

In reply, Plaintiff argues that that ALJ erred by considering only the consistency factor when evaluating Dr. Joseph's opinions. (Doc. 28 at 3-4.) According to Plaintiff, the new regulations do not displace the duty of ALJs "to consider each factor set forth by regulation, [including] a source's treatment relationship, examining relationship, and specialization," when evaluating medical opinion evidence. (*Id.* at 5-6.) Finally, Plaintiff reiterates that the supposed inconsistencies identified by the ALJ—normal eye contact and speech—are not inconsistent with Dr. Joseph's opined-to limitations. (*Id.* at 6.)

          d.      <u>Analysis</u>

Plaintiff has not established that the ALJ committed harmful error when evaluating the opinions of Dr. Joseph. Most of Plaintiff's criticisms are based on the old SSA regulations. But under the new regulations, an ALJ is only required to "articulate how persuasive [she] finds all of the medical opinions from each doctor or other source and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Contrary to Plaintiff's argument, "the ALJ no longer needs to make specific findings regarding [the] relationship factors." *Id.*

Here, the ALJ expressly considered the supportability and consistency factors in the portion of the order addressing Dr. Joseph's opinions. The ALJ explained that certain opinions were unpersuasive because they were "not well supported," "do not evidence consideration of much of the other medical evidence of record," "are not well explained," and/or "are broadly inconsistent with the objective documentation of record." (AR at 27-28.) The ALJ's finding of inconsistency was also supported by substantial evidence. Although Dr. Joseph opined that Plaintiff had "marked" limitations in her ability to "respond to requests, suggestions, criticism, correction and challenges" (*id.* at 359), the

records cited by the ALJ reflect that Plaintiff: (1) displayed "good eye contact" and was "open, responsive, . . . concise and spoke in a logical and appropriate manner" during one meeting with a medical provider (*id.* at 452 [11F/7]); (2) acted in the same manner during a different meeting with the medical provider (*id.* at 453 [11F/8]); and (3) was "able to give an adequate history and provide an adequate effort" and, "although nervous, spoke coherently, and her volume and rate of speech were within normal limits" during her psychological examination (*id.* at 441 [10F/4]).  Although Plaintiff contends that these observations "do[] not establish anything relevant to Plaintiff's ability to sustain work" (Doc. 28 at 6), it was rational for the ALJ to conclude that Plaintiff's observed behavior was inconsistent with Dr. Joseph's opinion that Plaintiff had "marked" limitations in her ability to "respond to requests."  Even though the Court may not have made the same finding of inconsistency if it were the factfinder in this case, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Given this determination, it is unnecessary to decide whether the ALJ's discussion of the supportability factor was also supported by substantial evidence.  Any error was harmless in light of the ALJ's error-free finding of inconsistency.

       3.    **Dr. Gill**

           a.    <u>The Underlying Opinion</u>

In August 2018, Dr. Gill conducted an interview, medical records review, and psychological evaluation of Plaintiff.  (AR at 438.)  Dr. Gill summarized the results of this evaluation, and his resulting opinions, in two forms.  The first was a psychological evaluation report.  (*Id.* at 438-43.)  This report was seven pages long and written in a narrative (rather than check-box) format.  (*Id.*)  Among other things, Dr. Gill observed that Plaintiff was "sad, upset, anxious, distractible and preoccupied" and that "she appeared anxious during the period of [the] evaluation, and appeared to suffer the effects of trauma including symptoms of fearfulness.  (*Id.* at 441.)  Dr. Gill documented Plaintiff's "anxious and depressed" mood "with signs of agitation" and observed that "[i]t is not clear that

[Plaintiff's] symptoms and conditions are improving with time." (*Id.* at 442.) Dr. Gill diagnosed Plaintiff with two conditions: (1) post-traumatic stress disorder; and (2) generalized anxiety disorder with episodes of panic. (*Id.*) As for Plaintiff's prognosis, Dr. Gill wrote: "[Plaintiff's] symptoms and conditions appear ongoing. She appears to suffer the effects of posttraumatic stress in the form of fearfulness, problems of emotional arousal and control, having her emotions shutdown at times, being socially isolated, and sleeping poorly and having nightmares with recurrent themes. [Plaintiff] appears with limitations in functioning independently to avoid social hazards and exercise social judgment. Her social skills appeared limited . . . ." (*Id.* at 443.)

In an accompanying one-page form entitled "Psychological/Psychiatric Medical Source Statement," Dr. Gill opined that Plaintiff "appears capable of understanding and recalling simple instructions in a supportive work environment" but "would likely have significant limitations understanding and remembering detailed instructions." (*Id.* at 444.) Dr. Gill added that despite Plaintiff's reported social anxiety and isolation, she still appeared capable of interacting with the public, peers, and supervisors in a supportive work environment. (*Id.*)

### b. The ALJ's Evaluation

The ALJ addressed the opinions of Dr. Gill and PA Cocilovo in the same paragraph, deeming both sets of opinions "not persuasive." (*Id.* at 28.) The ALJ elaborated:

> The opinions of Dr. Gill and Ms. Cocilovo are not persuasive. These assessments are not well supported. Many of these statements are check-box responses, and are not well explained. Even Dr. Gill's assertions contain little narrative explanation. Additionally, many of these assessments are indefinite or equivocal. These writers further did not review important parts of the claimant's instant documentation. Finally, these conclusions are broadly inconsistent with the medical evidence of record, including notations of the claimant demonstrating normal whole-body strength. (9F/8; 12F/4; 20F/50; 27F.) These conclusions are also inconsistent with, e.g., records of the claimant demonstrating intact judgment and insight. (11F/4; 14F/5; 17F/64, 113; 20F/24.) These conclusions are also inconsistent with notations of the claimant speaking normally. (10F/4; 11F/7, 8.)

(*Id.*)

c. The Parties' Arguments

Plaintiff argues, as an initial matter, that Dr. Gill's opinion "is deserving of greater weight given his direct examination of Plaintiff" and "specializ[ation] in a field of medicine relevant to the issues addressed in Dr. Gill's statement." (Doc. 22 at 13.) On the merits, Plaintiff argues that "[t]he ALJ did not provide independent reasons for rejecting . . . Dr. Gill's medical statements, instead providing only conclusory statements that . . . Dr. Gill's medical statements are 'not well supported,' 'are check-box responses,' 'are not well-explained,' 'are indefinite or equivocal,' [and] 'did not review important parts of the claimant's instant documentation.'" (*Id.*) These assertions are insufficient, according to Plaintiff, because the ALJ "cite[d] nothing in support of these conclusory statements and the allegation that the medical evidence is deficient does not make it so." (*Id.* at 13-14.) Finally, Plaintiff acknowledges that "[t]he ALJ does raise a single reason for rejecting Dr. Gill['s] . . . medical statements, with the ALJ asserting Dr. Gill['s] . . . medical statements are inconsistent with portions of the evidence in the record, suggesting Plaintiff has normal whole-body strength, intact judgment and insight, and Plaintiff was able to speak normally," but argues that "[w]hile consistency is one factor which an ALJ must consider, it is legal error to apply this factor at the exclusion of all other factors which an ALJ must consider." (*Id.* at 14.) Plaintiffs adds: "The ALJ is not a medical expert and the ALJ's equivocating [sic] of a single strength test during a treating or examining session to a claimant's ability to sustain lifting and carrying throughout an entire weekday is specious" and "[a]s to Plaintiff demonstrating normal insight, judgment, and normal speech, . . . none of these areas of functioning are relevant to Dr. Gill's finding [that] Plaintiff is limited in understanding, remembering, or carrying out more than simple instruction[] or interacting with others on a sustained basis." (*Id.* at 14-15.)

In response, the Commissioner again contends that Plaintiff's arguments miss the mark because "to her detriment [she] has relied on the old regulations—regulations not applicable in this case." (Doc. 25 at 15-16.) Turning specifically to Dr. Gill, the Commissioner argues that the ALJ "appropriately explained why she found the August

2018 opinion of [Dr. Gill] unpersuasive, concluding that the assessment was neither well-supported nor consistent with the record." (*Id.* at 21.) As for supportability, the Commissioner contends that the ALJ permissibly determined that Dr. Gill's opinions were "ambiguous[]," "equivocal," "not well explained," and inconsistent with some of his observations. (*Id.*) As for consistency, the Commissioner contends that the ALJ permissibly determined that Dr. Gill's opinions were inconsistent with "the objective findings like intact judgment and insight and normal speech." (*Id.*)

In reply, Plaintiff argues (as she did with respect to Dr. Joseph) that the new regulations do not displace the duty of ALJs "to consider each factor set forth by regulation, [including] a source's treatment relationship, examining relationship, and specialization," when evaluating medical opinion evidence. (Doc. 28 at 5-6.) Thus, Plaintiff contends that the ALJ's analysis of Dr. Gill's opinions was flawed because the ALJ did not "consider Dr. Gill's examining relationship or Dr. Gill's familiarity with Defendant's disability programs." (*Id.* at 6.) Plaintiff also accuses the Commissioner of offering *post hoc* rationalizations for the ALJ's rejection of Dr. Gill's opinions. (*Id.* at 7-8.)

d. <u>Analysis</u>

As was the case with Dr. Joseph, most of Plaintiff's arguments concerning Dr. Gill lack merit because they are based on the old SSA regulations. Under the new regulations, so long as the ALJ "explain[ed] how [she] considered the supportability and consistency factors" when evaluating Dr. Gill's opinions and provided reasoning supported by substantial evidence, the Court must affirm. *Woods*, 32 F.4th at 792 (cleaned up). "[T]he ALJ no longer needs to make specific findings regarding [the] relationship factors." *Id.*

Here, the ALJ considered the supportability and consistency factors when addressing Dr. Gill's opinions. However, unlike with Dr. Joseph, the ALJ's analysis as to those factors was not supported by substantial evidence. The ALJ's supportability analysis was as follows: "Many of these statements are check-box responses, and are not well explained. Even Dr. Gill's assertions contain little narrative explanation. Additionally, many of these assessments are indefinite or equivocal. These writers further did not review

important parts of the claimant's instant documentation." (AR at 28.) But Dr. Gill's report was not in check-box format and did not contain "little narrative explanation"—Dr. Gill provided a detailed seven-page summary of Plaintiff's psychological, medical, and social history, current level of functioning, mental status examination results, and prognosis. (AR at 438-42.) As for the ALJ's assertion that some of Dr. Gill's assessments were "indefinite or equivocal," the problem is that the ALJ did not identify any of the offending assessments. This makes it impossible to evaluate whether the ALJ's characterization of those unidentified assessments as indefinite or equivocal is supported by substantial evidence. Although the Commissioner attempts to identify examples of indefinite and equivocal assessments in the answering brief, Plaintiff correctly notes in her reply that such *post hoc* rationalization is impermissible in the Social Security context. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Finally, as for the ALJ's contention that Dr. Gill "did not review important parts of the claimant's instant documentation," this analysis is again too bereft of specifics to enable meaningful review—the ALJ does not identify which parts of Plaintiff's medical file were "important" or explain why those unidentified records undermined the supportability of Dr. Gill's unidentified opinions.

As for the consistency factor, the ALJ stated that Dr. Gill's assessments were "broadly inconsistent with the" the following three categories of "medical evidence of record": (1) "notations of the claimant demonstrating normal whole-body strength," (2) "records of the claimant demonstrating intact judgment and insight," and (3) "notations of the claimant speaking normally." (AR at 28.) Unfortunately, the ALJ did not explain *why* Dr. Gill's assessments should be considered inconsistent with evidence of normal strength, intact judgment and insight, and normal speech. Unlike Dr. Joseph, who checked a box containing an opinion (*i.e.*, Plaintiff had "marked" limitations in "responding to requests") that was facially inconsistent with such observations, Dr. Gill's opinions were more

nuanced. Perhaps there is some basis for concluding that the findings of normal strength, intact judgment and insight, and normal speech findings were inconsistent with Dr. Gill's assessments, but it was the ALJ's responsibility to explain why in the first instance. And as with the supportability factor, the Commissioner cannot supply the missing rationale for the first time in this proceeding.

### 4. **PA Cocilovo**

#### a. The Underlying Opinion

On August 6, 2018, PA Cocilovo conducted an interview and physical examination of Plaintiff. (AR at 417-24.) PA Cocilovo began by documenting Plaintiff's treatment history, medications, daily activities, and symptoms. (*Id.* at 417-18.) Next, PA Cocilovo documented Plaintiff's presentation, stating that Plaintiff had normal gait, balance, and stooping ability, no neurological deficits or muscle atrophy, normal strength, and normal extremity muscle bulk, except for Plaintiff's left arm (which was in a sling due to a rotator cuff injury). (*Id.* at 419-20.) PA Cocilovo also noted normal sensation, fine motor skills, and range of motion and no gross deformity or pain with palpation in the spine. (*Id.* at 420-21.) In the final portion of the form, entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," PA Cocilovo diagnosed Plaintiff with various conditions (chronic migraines, anxiety, insomnia, PTSD, depression, left rotator cuff injury, irritable bowel syndrome, asthma) and opined, *inter alia*, Plaintiff would be limited to lifting or carrying weights no heavier than ten pounds, had no limitations in standing, walking, or sitting, and had no postural limitations except for occasional reaching and handling on the left. (*Id.* at 422-23.)

#### b. The ALJ's Evaluation

As noted, the ALJ grouped together PA Cocilovo's and Dr. Gill's opinions in the relevant paragraph of the underlying opinion, deeming both "not persuasive" for seemingly the same reasons:

> The opinions of Dr. Gill and Ms. Cocilovo are not persuasive. These assessments are not well supported. Many of these statements are check-box responses, and are not well explained. Even Dr. Gill's assertions contain

little narrative explanation. Additionally, many of these assessments are indefinite or equivocal. These writers further did not review important parts of the claimant's instant documentation. Finally, these conclusions are broadly inconsistent with the medical evidence of record, including notations of the claimant demonstrating normal whole-body strength. (9F/8; 12F/4; 20F/50; 27F.) These conclusions are also inconsistent with, e.g., records of the claimant demonstrating intact judgment and insight. (11F/4; 14F/5; 17F/64, 113; 20F/24.) These conclusions are also inconsistent with notations of the claimant speaking normally. (10F/4; 11F/7, 8.)

(*Id.* at 28.)

### c. The Parties' Arguments

Plaintiff's arguments regarding PA Cocilovo are similar to her arguments regarding Dr. Gill. (Doc. 22 at 12-15.) In a nutshell, Plaintiff contends that the ALJ was required to defer to PA Cocilovo given PA Cocilovo's status as an examining source; that the ALJ's application of the supportability and consistency factors was flawed because it consisted of mere "conclusory statements"; and that the ALJ could not rely solely on the consistency factor as the basis for discrediting PA Cocilovo's opinions. (*Id.*)

The Commissioner's responsive arguments are similar to the Commissioner's arguments regarding Dr. Gill. (Doc. 25 at 15-16, 22-23.) Once again, the Commissioner faults Plaintiff for relying on the old regulations, notes that the ALJ considered the supportability and consistency factors when assessing PA Cocilovo's opinions, and argues that the ALJ's consideration of those factors was supported by substantial evidence. (*Id.*)

In reply, Plaintiff makes essentially the same arguments she made with respect to Dr. Gill. (Doc. 28 at 5-8.)

### d. Analysis

It is a close call whether the ALJ provided a legally sufficient rationale for discrediting the opinions of PA Cocilovo. On the one hand, Plaintiff's reliance on the old regulations forecloses many of her challenges. On the other hand, the ALJ's decision to jointly address the opinions of Dr. Gill and PA Cocilovo in a single paragraph (which was largely devoid of specifics), even though the opinions addressed wholly different topics (Dr. Gill addressed Plaintiff's psychological limitations while PA Cocilovo addressed

Plaintiff's physical limitations), makes it difficult to conduct a meaningful review of the ALJ's analysis under agency-law principles.

Acknowledging the closeness of the issue, the Court concludes that the ALJ's analysis regarding PA Cocilovo was free of harmful, reversible error. Although the ALJ's supportability analysis regarding PA Cocilovo was impermissibly vague and conclusory, the ALJ's consistency analysis (while itself not a model of precision) reasonably suggests that the ALJ rejected the one opined-to limitation in PA Cocilovo's assessment (*i.e.*, Plaintiff could only lift and carry 10 pounds) in light of the other medical evidence showing that Plaintiff had normal whole-body strength. It would be rational for a factfinder to find inconsistency in this circumstance.

B.   Remedy

The credit-as-true rule only applies in the "rare circumstances" which permit the Court to depart from the ordinary remand rule. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three criteria are met: (1) the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence; (2) the record must be fully developed and there must be no outstanding issues that must be resolved before a determination of disability can be made; and (3) the Court must find that further administrative proceedings would not be useful. *Id.* at 1100-1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* If the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted). Still, whether to remand for payment or additional proceedings is within the discretion of the Court, and the Court may remand for further proceedings if the record as a whole creates serious doubt as to the Plaintiff's disabled status. *Garrison*, 759 F.3d at 1021.

In this case, the credit-as-true rule does not apply. Additional proceedings would serve the useful purpose of affording the ALJ an opportunity to analyze Dr. Gill's opinions

1  with more specificity. The Court also has series doubt about Plaintiff's disabled status in
2  light of the ALJ's unchallenged determination that Plaintiff's symptom testimony was not
3  credible. Finally, the Court clarifies that it would have remanded for further proceedings
4  even if it had determined that the ALJ committed error when evaluating the medical
5  opinions of Dr. Joseph and PA Cocilovo—to the extent Plaintiff has identified errors in the
6  ALJ's consideration of those opinions, further proceedings would be useful in allowing the
7  ALJ to articulate her rationale with more specificity.

8  Accordingly, **IT IS ORDERED** that:

9  1. The reference to the magistrate judge (Doc. 8) is **withdrawn**.

10 2. The October 9, 2020 decision of the Administrative Law Judge is **reversed**
11 **and remanded for further proceedings**.

12 3. The Clerk shall enter judgment accordingly and to terminate this action.

13 Dated this 19th day of September, 2022.

Dominic W. Lanza
United States District Judge